O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RHONDA NIXON, | ) | NO. EDCV 09-00391-MAN |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | AND ORDER |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

        Plaintiff filed a Complaint on March 5, 2009, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI").  On April 8, 2009, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The parties filed a Joint Stipulation on November 23, 2009 ("Joint Stip.), in which: plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, in the alternative, remanding the matter for further administrative proceedings; and defendant seeks an order affirming the Commissioner's decision.  The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On November 17, 2004, plaintiff filed a protective application for a period of disability and DIB, alleging a disability onset date of January 17, 2003, due to difficulties with concentration and memory, a brain aneurysm, mood swings, advanced osteoporosis, and headaches. (Administrative Record ("A.R.") 19, 28, 45, 48.)  Plaintiff has past relevant work as a bookkeeper.  (A.R. 49.)

The Commissioner denied plaintiff's application initially and upon reconsideration.  (A.R. 19-25, 28-32.)  On June 16, 2006, plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge F. Keith Varni ("ALJ").  (A.R. 112-26.)  On July 24, 2006, the ALJ denied plaintiff's claim.  (A.R. 10-13.)  The Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision.  (A.R. 3-5.)

On January 11, 2007, Plaintiff filed a civil action in this district, in Case No. EDCV 06-1425-MAN.  (A.R. 165.)  On March 31, 2008, this Court reversed the Commissioner on the basis that the ALJ failed to develop the record adequately regarding plaintiff's medical records from Kaiser and to consider lay witness testimony.  (A.R. 165-73.)  This Court remanded the matter for further proceedings consistent with its decision.  (AR 173).

While the foregoing civil action was pending in this Court, on January 17, 2007, plaintiff filed a subsequent application for a period of disability, DIB, and SSI, alleging a disability onset date of March

2

7, 2003, due to memory problems, severe headaches, and focus problems. (A.R. 161, 283-84, 329.)  The Commissioner denied the second application initially and upon reconsideration.  (A.R. 283-84, 298-308.)  On June 17, 2008, the Appeals Council noted this Court's remand order and directed the ALJ to associate the two Title II (period of disability and DIB) claims and issue a new decision on the associated claims, and further, to consider whether to consolidate the SSI claim filed on January 17, 2007, with the DIB claims.  (A.R. 161.)

On November 13, 2008, plaintiff, who was represented by counsel, testified before the ALJ.  (A.R. 261-77.)  Joseph Mooney testified as a vocational expert at the hearing.  (A.R. 277-79.)  On February 4, 2009, the ALJ issued a written decision that:  consolidated the DIB and SSI claims; and denied plaintiff's consolidated claims.  (A.R. 134-41.)  The Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision.  (Joint Stip. at 2.)

### SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff did not engage in substantial gainful activity from March 7, 2003, the alleged onset date, through the date of the decision.  (A.R. 136.)  The ALJ determined that plaintiff had the following severe impairments:  brain aneurysm, status post clipping; mixed migraine and muscle tension headaches; cognitive disorder, not otherwise specified; and depressive disorder, not otherwise specified. (A.R. 136-37.)  He concluded that these impairments did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (A.R. 137.)

The ALJ determined that plaintiff had the residual functional capacity ("RFC") to:

> perform light and medium work as defined in 20 CFR 404.1567 and 416.967 except lifting or carrying more than forth [*sic*] pounds occasionally, or twenty pounds frequently and routine, repetitive entry level, minimally stressful work, requiring no contact with the general public and superficial interpersonal contact with coworkers and supervisors.

(A.R. 138.)  The ALJ found that plaintiff was unable to perform her past relevant work.  (A.R. 140.)

Having considered plaintiff's age, education, work experience, and RFC, as well as in reliance on testimony from the vocational expert, the ALJ found that jobs exist in the national economy that plaintiff can perform, including those of housekeeper, cleaner, packer, and unskilled office aide.  (A.R. 140-41.)  Accordingly, the ALJ concluded that plaintiff was not disabled, as defined in the Social Security Act, from March 7, 2003, the alleged onset date, through the date of his decision. (A.R. 141.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant

4

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted).  The "evidence must be more than a mere scintilla but not necessarily a preponderance." <u>Connett v. Barnhart</u>, 340 F.3d 871, 873 (9th Cir. 2003).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Sec'y of Health and Human Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995).  "Where the evidence as a whole can support either a grant or a denial, [a federal court] may not substitute [its] judgment for the ALJ's." <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1222 (9th Cir. 2009)(citation and internal punctuation omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. <u>Tommasetti v. Astrue</u>, 553 F.3d 1035, 1038 (9th Cir. 2008); <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005); *see also* <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1193 (9th Cir. 2004)("if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's

decision"). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v. Comm'r, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); see also Tommasetti, 533 F.3d at 1038; Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges the following five issues: (1) whether the ALJ properly considered Dr. Douglas W. Larson's findings regarding Plaintiff's limitations; (2) whether the ALJ properly considered the treating clinician's opinion; (3) whether the ALJ properly considered the side effects of plaintiff's medications; (4) whether the ALJ properly developed the record; and (5) whether the ALJ properly considered lay witness testimony. (Joint Stip. at 3.)

**I.   The ALJ Properly Considered Dr. Larson's Opinion.**

In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§

6

404.1527(d)(1)-(2), 416.927(d)(1)-(2).   Where a treating or examining physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons.   Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).   Where contradicted by another doctor, the ALJ may not reject the opinion of a treating or examining physician without providing "specific and legitimate" reasons supported by substantial evidence in the record.   *Id.* at 830-31.

On August 14, 2008, Dr. Douglas W. Larson[1] performed a comprehensive psychiatric evaluation of plaintiff.[2]   (A.R. 232-39.)   Dr. Larson reviewed plaintiff's medical records from Arrowhead Regional Medical Center, interviewed plaintiff, and performed several tests.   (*Id.*)   Subsequently, Dr. Larson issued two opinions:   a summary of the comprehensive psychiatric evaluation, dated August 14, 2008 (the "Larson Opinion") (A.R. 232-39); and a Medical Source Statement of Ability to Do Work-Related Activities (Mental) (the "Medical Source Statement") (A.R. 241-43).

In the Larson Opinion, Dr. Larson diagnosed plaintiff with a cognitive disorder, not otherwise specified, and depressive disorder, not otherwise specified, and assigned plaintiff a Global Assessment of

---

[1]   Dr. Larson is a licensed psychologist.   (A.R. 239.)   Because licensed psychologists are acceptable medical sources whose opinions are considered medical opinions, the Court will refer to Dr. Larson as a physician.   20 C.F.R. §§ 404.1513(a)(2) and 404.1527(a)(2)

[2]   Plaintiff mischaracterizes Dr. Larson as a State Agency review psychologist.   (Joint Stip. at 3-5.)   The record clearly demonstrates that Dr. Larson was an examining physician.   (*See* A.R. 232-39.)

Functioning ("GAF") score of 57.[3]   (A.R. 237.)   Dr. Larson noted that plaintiff had an aneurysm and possible myocardial infarction.   (A.R. 232.)   Dr. Larson further noted plaintiff's complaints of severe headaches and difficulties with memory, concentration, and communication.   (A.R. 232-33.)   Plaintiff reported that she was combative as a result of her difficulties communicating with others (A.R. 233), and Dr. Larson noted that plaintiff "kind of proved her point" that she is not a good communicator, observing that "argumentative may have been a better term" (A.R. 236).   Dr. Larson further noted that, with respect to daily living, plaintiff does household chores, does yard work, drives a car, and sews.   (A.R. 234-35.)   Dr. Larson acknowledged that plaintiff presented a difficult case, because although she reported difficulties functioning, she also "present[ed] as a fairly bright individual who can perform many routine mental calculations with no interference at all."   (A.R. 237-38.)   Dr. Larson commented that plaintiff's alcohol use may contribute to her difficulties in functioning but indicated that "it is somewhat difficult to determine."   (A.R. 238.)

Consequently, Dr. Larson opined that plaintiff had some moderate functional limitations and restated his functional assessment from the Medical Source Statement.   (A.R. 238-39, 241-43.)   Dr. Larson found that plaintiff has "no impairment in terms of understanding, remembering,

---

[3]   A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning.   It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations.   DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, at 32 (4th Ed. 2000).   A GAF score between 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.   *Id.* at 34.

carrying out simple instructions and the ability to make judgments on simple work-related decisions." (A.R. 238, 241.) If plaintiff is presented with complex instructions or work-related decisions, however, Dr. Larson opined that she would have moderate difficulty understanding, remembering, carrying out, and making judgments. (*Id.*) Dr. Larson cited examples that supported his conclusion that plaintiff would experience moderate difficulty with respect to complex instructions and decisions. (*Id.*) Dr. Larson further opined that plaintiff is moderately impaired in her ability to interact with others and respond appropriately to work situations and changes to routines in work settings. (A.R. 238-39, 242.)

Plaintiff contends that the ALJ "failed to discuss or even mention" the Medical Source Statement. (Joint Stip. at 3-5.) Specifically, plaintiff argues that the ALJ failed to consider plaintiff's limitations as to which Dr. Larson opined in the Medical Source Statement. (*Id.* at 5.) Plaintiff's claim is without merit.

Contrary to plaintiff's contention, the ALJ discussed and credited the Larson Opinion and Medical Source Statement. Although the ALJ did not expressly mention either by name, he discussed the findings from the August 2008 consultative psychological examination. (A.R. 137-38.) Dr. Larson was the only physician to perform a consultative psychological examination on plaintiff in August 2008. The ALJ noted that, contrary to the findings in the 2005 consultative psychological evaluation, Dr. Larson concluded that there were positive findings of a mental impairment. (A.R. 137.) The ALJ also noted that Dr. Larson assessed a GAF score of 57, which indicated that plaintiff exhibited moderate

9

limitations.   (*Id.*)   In setting forth plaintiff's RFC, the ALJ specifically stated that he had "credit[ed] the finding of [Dr. Larson] and f[ou]nd mild to moderate limitation mentally." (A.R. 139.)  Indeed, plaintiff's RFC reflects the ALJ's inclusion of Dr. Larson's limitations with respect to complex work and interaction with others, as the ALJ limited plaintiff to "routine, repetitive entry level, minimally stressful work, requiring no contact with the general public and superficial interpersonal contact with coworkers and supervisors." (A.R. 138.)

Accordingly, the ALJ properly considered the opinion of Dr. Larson and did not err.

**II.   The ALJ Was Not Required To Discuss The Opinion Of A Treating Clinician.**

An ALJ is not required to discuss every piece of evidence in the record.  *See* <u>Howard v. Barnhart</u>, 341 F.3d 1006, 1012 (9th Cir. 2003) ("in interpreting the evidence and developing the record, the ALJ does not need 'to discuss every piece of evidence'")(citation omitted).  The Social Security Administration's regulations state that, "[i]n addition to evidence from the acceptable medical sources . . . we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work."  20 C.F.R. §§ 404.1513(d), 416.913(d).  Contrary to plaintiff's argument, an ALJ does not commit legal error by failing to discuss the opinion of a non-physician who has only examined plaintiff on one occasion.

10

1    On March 7, 2008, plaintiff made a follow-up visit to the Family
2    Health Center at Arrowhead Regional Medical Center regarding her
3    headaches.   (A.R. 207-08.)    An unidentified clinician[4] examined
4    plaintiff. (A.R. 207.)  In an Out Patient Note, the clinician indicated
5    a diagnosis of migraine headaches and bipolar disorder.   (A.R. 207-08.)
6    The clinician referred plaintiff to the Phoenix Clinic for psychiatric
7    treatment.  (A.R. 207.)

8

9    Plaintiff contends that the ALJ erred, because he failed to discuss
10   or even mention this Out Patient Note. (Joint Stip. at 7-8.)  Plaintiff
11   further argues that the ALJ needed to provide "legally sufficient
12   reasons" for rejecting the note.  (Joint Stip. at 8.)

13

14   Plaintiff acknowledges that the examining clinician is not an
15   acceptable medical source. (Joint Stip. at 8.)  Construing the record
16   in plaintiff's favor, the Court assumes that the examining clinician is
17   either a physician's assistant, nurse practitioner, or nurse, none of
18   whom is an acceptable medical source.   Further, there is no evidence
19   that the clinician worked closely with any of plaintiff's doctors such
20   that he or she was acting as a doctor's agent and could be considered an
21   acceptable medical source.   *See* <u>Gomez v. Chater</u>, 74 F.3d 967, 970-71
22   (9th Cir. 1996)(finding that a nurse practitioner who worked in
23   conjunction with, and under the supervision of, a physician could be
24   considered an acceptable medical source).   Thus, the Out Patient Note

25

26   [4]   Neither plaintiff nor defendant identify the person who signed the
     Out Patient Note, although both assert that the person was a clinician
27   and was not a physician.  (Joint Stip. at 7-9.)  Although the signature
     is mostly legible, the Court also cannot decipher the name of the
28   examining clinician.  (A.R. 207.)

did not constitute a medical opinion that the ALJ was required to discuss.   20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) ("[m]edical opinions are statements from physicians or psychologists or other acceptable medical sources . . ."). Instead, a treating clinician constitutes an "other source," whose opinion the ALJ **may**, but is not required to, consider. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).

Here, the Out Patient Note does not mention any functional limitations; it simply includes plaintiff's reported complaints and a diagnosis. (A.R. 207-08.)   Although the Out Patient Note references plaintiff's reported symptoms, these symptoms are also discussed in other treatment notes and the medical opinions. (*Compare* A.R. 208 and 209, 237.)   Because the Out Patient Note is not an opinion from an acceptable medical source and provides no information as to plaintiff's limitations and daily functioning, the ALJ was not required to discuss it.[5]

Accordingly, the ALJ's omission of a discussion of the Out Patient Note from the decision was not reversible error.

///

///

///

---

[5]   Although the ALJ did not discuss the Out Patient Note, two consultative examining physicians reviewed plaintiff's medical records, including this note and referenced it in their opinions. Dr. Robert A. Moore and Dr. Larson both expressly stated that they reviewed plaintiff's medical records from 2006 through 2008. (A.R. 227, 232.) Further, Dr. Larson noted that the treating clinician indicated that plaintiff possibly had bipolar disease and referred her to the Phoenix Clinic, with which plaintiff did not follow up. (A.R. 232.) The ALJ discussed both Dr. Moore's and Dr. Larson's opinions in his decision. (A.R. 137-39.)

1   **III.  There Is No Reversible Error With Respect To The ALJ's**
2        **Consideration Of The Side Effects Of Plaintiff's Medications.**

3

4        Pursuant to Social Security Ruling ("SSR") 96-7p, an ALJ must
5   consider the "type, dosage, effectiveness, and side effects of any
6   medication the individual takes or has taken to alleviate pain or other
7   symptoms."  However, an ALJ need only consider those medication side
8   effects that have a "significant impact on an individual's ability to
9   work."  Erickson v. Shalala, 9 F.3d 813, 817-18 (9th Cir. 1993)
10  (citation and internal punctuation omitted).  Side effects of
11  medications not severe enough to interfere with a claimant's ability to
12  work are properly excluded from consideration.  See Osenbrock v. Apfel,
13  240 F.3d 1157, 1164 (9th Cir. 2001)("There were passing mentions of the
14  side effects of [the claimant's] medication in some of the medical
15  records, but there was no evidence of side effects severe enough to
16  interfere with [the claimant's] ability to work.").

17

18       Plaintiff submitted a Medication Record Update, which lists the 11
19  medications she was prescribed between January 15, 2008, and October 15,
20  2008.[6]  (A.R. 177.)  According to the Medication Record Update, a doctor
21  prescribed these medications for plaintiff's headaches, inflammation,
22  cough, tooth infection, and congestion.  (Id.)  There are only two
23  references to side effects in the record.  On March 7, 2008, plaintiff
24  reported to a treating clinician that she experienced the side effects
25  of a "hook feeling" and "compression feeling" from Maxalt and sleepiness

26  _____

27  [6]    The Medication Record Update contains 14 entries, but there are
    duplicate medications   (A.R. 177.)  They reflect changes in dosage
28  amounts.  It is unclear who completed this list.

13

from Norco.  (A.R. 208.)  In a May 7, 2008 treatment note, the doctor indicated that plaintiff experienced side effects from Maxalt.[7]  (A.R. 211.)

Plaintiff contends that "the ALJ failed to discuss or even mention the side effects of [p]laintiff's prescribed medications." (Joint Stip. at 10.)  Plaintiff also raises two sub-issues:  (1) whether the ALJ properly represented the medical record; and (2) whether he substituted his opinion for medical expert testimony.  (Joint Stip. at 9-12.)  The sub-issues are red-herrings that serve to distract from the actual issue and the fact that plaintiff has not met her burden to show that the use of medications, and any side effects therefrom, had a negative effect on her ability to work.  *See* Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985)(stating that a claimant bears the burden of proving that her medication impairs her ability to work).

As an initial matter, the Court notes that the Medication Record Update appears to be a list of all medications plaintiff was prescribed from January 15, 2008, through October 15, 2008, and is not a comprehensive list of all of the medications she was taking the day she submitted the list.[8]  Regardless of which medications plaintiff was taking at the time of the decision, however, plaintiff failed to

---

[7]   The note specifically stated that "Triptans cause side effects." (A.R. 211.)  The record reflects that the only triptan prescribed to plaintiff was Maxalt.

[8]   For example, it is highly unlikely that, in October 2008 when this list was created, plaintiff was still taking Promethazine, which was first prescribed for a cough April 2008, and Amoxicillin, which was first prescribed for a tooth infection in May 2008. (A.R. 177.)

establish how the use of any of the medications had a negative effect on her ability to work.  The only side effects plaintiff reported were from Maxalt and Norco (A.R. 208), but a one-time complaint does not prove that such side effects affected or affect her ability to work.  The passing references to side effects from plaintiff's medications are inadequate to establish a disabling condition, because there is no objective medical evidence to show that plaintiff's purported side effects resulted in functional limitations that were severe enough to interfere with her ability to work.  *See* <u>Osenbrock</u>, 240 F.3d at 1164 (finding that side effects not severe enough to impair ability to work are not relevant).  Further, even assuming that the side effects from Maxalt would negatively affect plaintiff's ability to work, she stopped taking Maxalt in March 2008.  (A.R. 208.)

As noted above, plaintiff further contends that the ALJ misrepresented the record -- by stating that the medications on plaintiff's list are not reflected in her treatment records -- and substituted his opinion for medical expert opinion -- by asserting that such medications "would indicate that she is seriously overmedicated." (Joint Stip. at 10.)  These contentions are repetitive of another issue raised by plaintiff, *i.e.*, whether the ALJ properly developed the record, and serve no purpose other than to distract from her actual argument concerning the ALJ's failure to address the alleged side effects of her medications.  (Joint Stip. at 10-11.)  As discussed in detail *infra*, the medications are reflected in the record.  Although the ALJ's comment regarding overmedication is highly inappropriate, and his comment that plaintiff's medications are not reflected in her treatment records suggests that the ALJ needs to exercise more diligence in

reviewing the record, these comments do not concern side effects.  Nor do the comments constitute reversible error, as discussed *infra*.

Plaintiff did not meet her burden of demonstrating that her use of medications impaired her ability to work.  Accordingly, the ALJ did not err in his consideration of the side effects of plaintiff's medication.

**IV.   The ALJ Properly Developed The Record.**

In social security cases, the law is well-settled that the ALJ has an affirmative "'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'"  <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001)(citations omitted).  "This duty extends to the represented as well as to the unrepresented claimant."  *Id*.  When a claimant is not represented by counsel, an ALJ "must be especially diligent in exploring for all the relevant facts." *Id*.  The ALJ's duty to develop the record extends from the basic premise that social security hearings are not adversarial in nature.  <u>De Lorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991); *see also* <u>Sims v. Apfel</u>, 530 U.S. 103, 111 (2000)("It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.").  "The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous."  <u>Webb v. Barnhart</u>, 433 F.3d 683, 687 (9th Cir. 2005)(citing <u>Tonapetyan</u>, 242 F.3d at 1150).

Plaintiff contends that the ALJ failed to properly develop the

16

1  record.  (Joint Stip. at 13-15.)  Specifically, plaintiff argues that
2  the ALJ had a duty to verify the medications reflected on plaintiff's
3  Medication Record Update (A.R. 177), by requesting additional treatment
4  records, subpoenaing physicians, continuing the hearing, or allowing for
5  supplementation of the record.  (Joint Stip. at 14.)

6

7      The duty to further develop the record was not triggered here.  The
8  evidence was not ambiguous, and the record was not inadequate.  Contrary
9  to the ALJ's findings, the list of medications at issue can be verified
10 by reviewing the record.[9]  (*Compare* A.R. 177 and 207-08, 211-12, 215,
11 248-49, 251-52, 257.)   Thus, there was no need to request additional
12 treatment records or subpoena the treating physicians.

13

14     Although the ALJ erred by stating that the list of medications are
15 not verified by the record and seemingly made little effort to verify
16 the medications, his lack of diligence is harmless.  *See* Burch, 400 F.3d
17 at 679.  The ALJ would have reached the same disability determination
18 despite this error.   The medication list reflects that the primary
19 purpose of the majority of the medications was for plaintiff's
20 headaches.  (A.R. 177.)  Although the ALJ claimed that the medications
21 could not be verified, he still concluded that plaintiff suffered from
22 the severe impairment of mixed migraine and muscle tension headaches.
23 (A.R. 136.)  The treatment records clearly show that plaintiff suffered
24 from headaches and was taking various medications to ease the pain.
25 (*See, e.g.*, A.R. 217, 248.)  Plaintiff discussed her headaches with each
26 of the examining physicians, and the ALJ included their opinions and

27
28 [9]   This verification required knowledge of the brand and generic names
   of drugs.

1   limitations in his determination.  *See* <u>Thomas v. Barnhart</u>, 278 F.3d 947,

2   958 (9th Cir. 2002)(finding that the duty to develop the record was not

3   triggered when the ALJ did not make a finding that the medical report

4   was inadequate to make a disability determination).

5

6       Accordingly, the ALJ did not commit reversible error when he failed

7   to verify the medication list.

8

9   **V.   The ALJ Failed To Provide Germane Reasons For Discounting Lay**

10      **Witness Testimony.**

11

12      In evaluating the credibility of a claimant's assertions of

13  functional limitations, the ALJ must consider lay witnesses' reported

14  observations of the claimant.  <u>Stout</u>, 454 F.3d at 1053.  "[F]riends and

15  family members in a position to observe a claimant's symptoms and daily

16  activities are competent to testify as to [the claimant's] condition."

17  <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918-19 (9th Cir. 1993); 20 C.F.R. §§

18  404.1513(d)(4), 416.913(d)(4) ("[W]e may also use evidence from other

19  sources to show the severity of your impairment(s). . . .  Other sources

20  include, but are not limited to . . . spouses, parents and other care-

21  givers, siblings, other relatives, friends, neighbors, and clergy.").

22  "If an ALJ disregards the testimony of a lay witness, the ALJ must

23  provide reasons 'that are germane to each witness.'"  <u>Bruce v. Astrue</u>,

24  557 F.3d 1113, 1115 (9th Cir. 2009)(citation omitted).  Further, the

25  reasons "germane to each witness" must be specific.  <u>Stout</u>, 454 F.3d at

26  1054 (explaining that "the ALJ, not the district court, is required to

27  provide specific reasons for rejecting lay testimony").

28

18

An ALJ may "properly discount[] lay testimony that conflict[s] with the available medical evidence," Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984), particularly, when, as in Vincent, "lay witnesses [are] making medical *diagnoses*," because "[s]uch medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)(emphasis in original).   When, as here, however, a lay witness testifies about a claimant's symptoms, such testimony *is* competent evidence and cannot be disregarded without comment. *Id*.   "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056.

Plaintiff contends that the ALJ failed to properly consider the testimony of Frieda Jones, plaintiff's mother. (Joint Stip. at 17-18.) Specifically, plaintiff argues that the reasons provided by the ALJ for rejecting Ms. Jones' testimony are not germane reasons to this witness. (Joint Stip. at 17.)   In a Function Report Adult Third Party Questionnaire dated December 20, 2004 (the "Questionnaire"), Ms. Jones provided observations regarding plaintiff's alleged impairments and their impact on plaintiff's daily activities and ability to work. (A.R. 55-62.)  Ms. Jones stated that she spends two to six hours each day with plaintiff.   (A.R. 55.)   Ms. Jones further stated that, prior to plaintiff's alleged disability, plaintiff worked full-time and was able to "communicate, socialize, rationalize, problem solve, [and] pay financial obligations." (A.R. 56.)  Ms. Jones stated that plaintiff now

has problems with memory, concentration, comprehension, following instructions, and getting along with people. (A.R. 60.) Ms. Jones asserted that plaintiff is unable to handle her finances and needs reminders to take her medication and perform housework. (A.R. 57-58.) In addition, plaintiff suffers from headaches and has uncontrolled anger. (A.R. 56, 59.)

The Questionnaire corroborates the symptoms alleged by plaintiff and which are mentioned in her medical history. Although the ALJ cited multiple reasons for discounting the Questionnaire, none are germane. First, the ALJ stated that plaintiff did not allege problems with interpersonal interactions due to anger in 2004, 2007, or 2008. (A.R. 138.) This is inaccurate. Although plaintiff may not have used those exact words, plaintiff indicated a problem interacting with others throughout this application process. In a Function Report dated December 20, 2004, plaintiff indicated that she had problems getting along with others and explained that, due to her now poor communication skills, she became frustrated talking to others. (A.R. 68.) In a Function Report dated March 9, 2007, plaintiff again indicated that she had problems getting along with others. (A.R. 339.) She stated that she could "get along with someone for a very short period of time until it turns into a verbally abusive argument defending myself for one reason" or another. (*Id.*) On May 2, 2007, at a psychological evaluation, plaintiff told Dr. Clifford Taylor that she had "unexplained fits of anger." (A.R. 377.) At the August 14, 2008 comprehensive psychiatric evaluation with Dr. Larson, plaintiff told Dr. Larson that she is "unable to communicate with people and that as a result of it she finds herself as being combative." (A.R. 233.) The facts clearly

1  demonstrate that plaintiff raised her problems with interpersonal
2  interactions and anger in 2004, 2007, and 2008.

3

4      Second, the ALJ stated that there was a dearth of medical records
5  and minimal-to-negative clinical findings to support the finding of
6  impaired social functioning. (A.R. 138.) This is not a germane reason
7  for rejecting lay witness testimony. One of the purposes of lay witness
8  testimony is to provide insight into a claimant's daily activities that
9  medical evidence cannot. *See* Smolen v. Chater, 80 F.3d 1273, 1288-89
10 (9th Cir. 1996)(stating that under SSR 88-13, when medical evidence is
11 sparse, the ALJ must consider lay witness testimony regarding a
12 claimant's symptoms). "The rejection of the testimony of [a claimant's]
13 family members because [her] medical records [do] not corroborate her
14 fatigue and pain violates SSR 88-13, which directs the ALJ to consider
15 the testimony of lay witnesses where the claimant's alleged symptoms are
16 unsupported by her medical records." *Id*. at 1289. Ms. Jones'
17 statements do not contradict any medical records and they merely serve
18 to supplement where medical evidence does not exist. As such, the lack
19 of medical records is not a germane reason for discounting the
20 Questionnaire.

21

22     Third, the ALJ stated that plaintiff's self-described daily
23 activities are "contrary to" the Questionnaire. (A.R. 139.) The ALJ
24 stated that plaintiff testified she can perform housework, including
25 cooking and laundry, and drive without any restrictions. (*Id.*) It is
26 unclear how these statements are contrary to the Questionnaire. Ms.
27 Jones reported that plaintiff is able to do "laundry and general
28 cleaning" and that she drives. (A.R. 57-58.) Both plaintiff and Ms.

Jones also report that plaintiff sews and does crafts, but is unable to complete the projects. (A.R. 59, 67.) The ALJ has not specified how plaintiff's statements are contrary to those of Ms. Jones.

Finally, the ALJ discounted the Questionnaire on the basis that it was inconsistent with the statements made by plaintiff's friend, Gary Engelkes, in a Function Report Adult Third Party Questionnaire he completed, which is dated March 13, 2007. (A.R. 139, 342-49.) The ALJ stated that he gave greater weight to the statements by Mr. Engelkes than by Ms. Jones and that the statements by Mr. Engelkes were more consistent with his findings. (A.R. 138-39.) The ALJ stated that, although Mr. Engelkes indicated that plaintiff had concentration and interpersonal troubles, he also indicated that plaintiff had no problems with routine activities of daily life and adequately performing simple tasks that do not involve interaction with others. (*Id.*) Again, the ALJ is wrong.

Mr. Engelkes stated that plaintiff worked two weekends a month at his snack bar, but that she cannot concentrate at her tasks and doesn't follow instructions, and he has had to send her home on several occasions. (A.R. 346-48.) As for her daily activities, while Mr. Engelkes states that plaintiff can cook, do housework, take care of her own finances, and garden, he also acknowledges that he does not see her cook, she has no money to manage, and he does not know how often or how well she gardens. (A.R. 344-46.) Thus, Mr. Engelkes' statements are not inconsistent with the Questionnaire and they are not a germane reason for discounting the Questionnaire.

On remand, the ALJ must provide germane reasons, if they exist, for rejecting Ms. Jones' statements regarding her observations of the nature and extent of plaintiff's alleged impairments and limitations, so that a reviewing court may know the basis for the ALJ's decision and have the ability to assess the propriety of that decision.  *See* <u>Bruce</u>, 557 F.3d at 1115; <u>Stout</u>, 454 F.3d at 1054.

**VI.  Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *Id.* at 1179-81.

Here, remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors.  *See, e.g.,* <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989) (remand appropriate to remedy defects in the record).

1

**CONCLUSION**

2

3        Accordingly, for the reasons stated above, IT IS ORDERED that the

4   decision of the Commissioner is REVERSED, and this case is REMANDED for

5   further proceedings consistent with this Memorandum Opinion and Order.

6   IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of

7   this Memorandum Opinion and Order and the Judgment on counsel for

8   plaintiff and for defendant.

9

10        **LET JUDGMENT BE ENTERED ACCORDINGLY.**

11

12   DATED: September 14, 2010

13                                    _Margaret A. Nagle_

14                                    MARGARET A. NAGLE
                                      UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24